Timothy B. Strauch
Resolute Law PLLC
257 West Front Street, Suite A
Missoula, Montana 59802
(406) 532-2600
tim@mtresolutelaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| DANIEL SILBERMANN and CHRISTY SILBERMANN, | Case |
| Plaintiffs, | **Plaintiffs' Complaint and Jury Demand** |
| vs. | |
| CLIFTON W. HAYDEN, individually and d/b/a LAW OFFICE OF CLIFTON W. HAYDEN, | |
| Defendant. | |

Daniel Silbermann and Christy Silbermann, demanding trial by jury, for their Complaint against Clifton W. Hayden, individually and d/b/a Law Office of Clifton W. Hayden, allege as follows:

### PARTIES

1.     Daniel Silbermann and Christy Silbermann (the "Silbermanns") are married citizens and domiciliaries of the State of Texas.

2.      Clifton W. Hayden, d/b/a Law Office of Clifton W. Hayden ("Hayden"), is an attorney licensed to practice law in the State of Montana. At all times material to the claims stated in this Complaint, he was and is a citizen of the State of Montana, domiciled and practicing law in Whitefish, Montana. Hayden represented the Silbermanns as their attorney in the State of Montana.

## JURISDICTION AND VENUE

3.      This Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

4.      The Court has personal jurisdiction over Hayden in that he is a person found within the State of Montana who transacts business in the State of Montana and who committed the acts complained of resulting in the accrual of torts within Montana.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C.  § 1391(b)(1) and (2), as Hayden resides in this district and the acts and omissions giving rise to the claims occurred here.

## FACTS SUPPORTING CLAIMS

### A.    The Facts of the Underlying Case

6.    The underlying case arose from a dispute over the purchase of real property located at 1021 Swanson Lodge Road in Troy, Montana, known as the Swanson Lodge (the "Property").

7.    The Property is situated on approximately 100 acres and includes a large, historic lodge, three rental homes, and several other structures.

8.    In April of 2021, the Silbermanns listed the Property for sale with real estate brokers Kathleen Dodd and Nanette Wise of New West Investments, LLC d/b/a Keller Williams Realty Northwest Montana, for $3,780,000. (Case 9:22-cv-00133-DLC-KLD ("Underlying Case"), Doc. 36-1 at 12-17). There were also associated sub-listings, which offered various portions of the Property at lesser prices.

9.    At that time, the Silbermanns had four groups of tenants living on the Property, one in each of the three rental houses, and one occupying the Lodge itself.

10.    On February 24, 2022, Hermanns Family Holdings Corporation, through Richard Hermanns ("Hermanns"), made a full-price offer on the entire Property. (Underlying Case Doc. 36-1 at 19-28).

11.    The Silbermanns ultimately accepted Hermanns' offer and executed a Buy-Sell Agreement on February 26, 2022. (*Id.*)

12.    The Buy-Sell Agreement did not include an expansive list of the personal property included in the sale and instead contemplated that prior to closing the Silbermanns would provide "either an inclusion or exclusion list." (*Id.*)

13.    The closing date was set for April 22, 2022. (*Id.*)

14.    Thereafter, the Silbermanns hired Hayden to represent them regarding their sale of the real and personal property located at the Property and any post-closing disputes arising out of that sale. The Silbermanns paid two advance payments to Hayden of $20,000 each to compensate him for his attorney fees and expenses.

15.    Following the execution of the Buy-Sell Agreement, Daniel Silbermann informed Hayden that he intended to remove certain fixtures from the Property, including solar panels, micro-hydro generators, gates, and boilers. Hayden communicated that intention to transactional counsel for Hermanns, who was opposed to the removal of those fixtures, and a stalemate arose between the contracting parties.

16.    On April 20, 2022—two days before the scheduled closing date—Hayden presented counsel for Hermanns with a document that Hayden had prepared entitled "Amendment to Buy-Sell Agreement." (Underlying Case Doc. 36-1 at 30-32, the "Amendment").

17.    The Amendment included 15 numbered paragraphs and enumerated specific personal property that the Silbermanns agreed would be included with the sale, such as appliances, propane tanks, heaters, and the like. The Amendment also provided that all other personal property not listed in the Amendment "or listed in Exhibit '1' attached" to the Amendment, was excluded from the sale. *Id.*

18.    The Amendment also stated that the Silbermanns would remove their personal property within 60 days, and that the Silbermanns could remain as tenants on the Property for $1.00 per month for 60 days after closing for the "sole purpose" of removing their remaining personal property. (Underlying Case Doc. 36-1 at 30-32).

19.    The Amendment also contained an attorneys' fee provision, which stated that any party that "defaults in its performance" of the terms of the Amendment "agrees to pay . . . costs, charges and expenses, including reasonable attorneys' fees, reasonably incurred" by the non-defaulting party. (*Id.*)

20.    Hermanns agreed to the terms of the Amendment, and on April 22, 2022, the contracting parties closed on the sale of the Property.

21.    Unbeknownst to the Silbermanns, Hayden had not prepared Exhibit 1 at the time the Amendment was presented to Hermanns' counsel nor was it attached to the Amendment prior to Hermanns' acceptance.

22.     Based upon the prior discussions in which the Silbermanns had expressed their intention to remove certain fixtures from the Property as well as Hayden's representations to the Silbermanns, it was their understanding that Hayden had prepared and transmitted Exhibit 1 to Hermanns and that it included the personal property and fixtures that the Silbermanns wanted to retain.

23.     After closing, the Silbermanns made several trips from their home in Texas to the Property to remove their personal property.

24.     On April 24, 2022, Daniel Silbermann began removing the Silbermanns' personal property from the lodge at the Property.

25.     At that time, one of the tenants occupying the lodge, Bill Adams, helped Daniel remove solar panels from the barn and some of the Silbermanns' personal property from the lodge and load it into a rental truck.

26.     The Silbermanns returned to the Property the following week to continue removing their personal property from the lodge.

27.     This time, Adams refused the Silbermanns' access to the lodge, so Daniel Silbermann began removing items from other areas of the Property. The property he removed included the remainder of the solar panels, micro-hydro generators, and boilers, which Daniel Silbermann believed, based upon Hayden's representations, had been included in Exhibit 1 that had been transmitted to Hermanns.

28.    At some point that day, there was a physical altercation between Daniel Silbermann and Adams, who hit Daniel and knocked him unconscious.

29.    On or about May 11, 2022, Daniel Silbermann returned to the Property again in order to remove the boiler system and some of his other personal furniture, at which time the "new" cabin tenant informed him that Hermanns had prohibited him from releasing any lodge furniture to the Silbermanns.  The Silbermanns contacted Hayden and asked him to provide them with a document to show to third parties and law enforcement their right to remove the personal property and fixtures. Hayden provided the Silbermanns with a copy of the purported Exhibit 1. Hayden led them to believe that the document authorized the removal of those items. Hayden did not tell the Silbermanns he had just created the document.

30.    On or about June 20, 2022—two days before the expiration of the Silbermanns' "lease"—the Silbermanns made their final trip to the Property to remove their remaining personal property, other than their property in the lodge. That day, Daniel Silbermann attempted to remove several gates that belonged to a neighbor, which were included within the terms of the Amendment and Exhibit 1.

31.    Apparently, someone called law enforcement to report that Dan Silbermann was "stealing" the gates. When police arrived, the Silbermanns told the responding police officer they were there to collect their property. The police officer did not tell the Silbermanns to leave, but the Silbermanns felt threatened and scared,

so they decided to leave. The Silbermanns never returned to the Property but sent an email to Hayden stating they were "not finished yet" removing all their personal property.

### B.    The Underlying Litigation

32.    Thereafter, Hayden, knowing the Amendment had been signed with no Exhibit 1 but with the Silbermanns' ignorance of that fact, counseled his clients to bring a civil action against Hermanns for the return of their personal property. The Silbermanns followed Hayden's advice, and on July 7, 2022, Hayden, on behalf of the Silbermanns, filed a civil Complaint in Lincoln County District Court, Cause No. DV-27-2022-0000109-BC (the "Complaint," Underlying Case Doc. 1-1). That action carried with it both a fee obligation for Hayden's legal services, as well as the risk of counterclaims for the removal of fixtures, and exposure for the Silbermanns to pay Hermanns' attorney fees as provided in paragraph 9 of the Amendment. Hayden did not reasonably or adequately consult with his clients about those risks, nor did he advise them that no such lawsuit was needed because Hermanns had catalogued and stored all of the Silbermanns' personal property and was eager for them to pick it up from a storage facility. Dan Silbermann did not learn of those facts until the time of his deposition almost two years later, through questioning by opposing counsel.

Plaintiffs' Complaint and Jury Demand – Page 8

33.    In the Complaint, Hayden asserted claims for, among other things, breach of contract, conversion, unjust enrichment, and declaratory judgment, based upon Hermanns' alleged violation of the Amendment signed by the parties. (*Id.*) The Complaint failed to mention the fact that the Amendment did not include the referenced Exhibit 1.

34.    Hermanns' counsel emailed Hayden on July 11, 2022, asking him to "provide me the Exhibit 1, along with" proof that it was attached to the Amendment prior to the April 22, 2022, closing. Hayden did not respond to that request.

35.    Hermanns subsequently removed the lawsuit to this Court (Underlying Case Doc. 1). On August 5, 2022, Hermanns, through counsel of record Jesse Kodadek, filed an Answer and Counterclaims. (*Id.*, Doc. 2). In the Answer, Hermanns asserted, through counsel, that "no Exhibit 1 was ever provided to Hermanns or his agents." (*Id.*)

36.    In the Counterclaims, Hermanns alleged that the Silbermanns were liable for fraud relating to the pre-sale representations concerning the Property, breach of the Amendment to the Buy-Sell Agreement, and conversion of property belonging to Hermanns. In addition, Hermanns made a claim for declaratory judgment, asking the Court to determine the parties' rights and obligations under the Amendment. (*Id.*)

37.    Hayden, on behalf of the Silbermanns, filed an Answer to the Counterclaims on August 29, 2022. (Underlying Case Doc. 6). In preparing the Answer to the Counterclaims, Hayden did not consult with the Silbermanns about their right to assert the defense of reliance upon the advice of counsel in connection with their removal of fixtures from the Property, and no such defense was alleged. (*Id.*) Reliance on advice of counsel is an affirmative defense that is waived if not pleaded. Further, Hayden again did not disclose the fact that the Amendment never included Exhibit 1.

38.    Kodadek sent another email to Hayden, on October 10, 2022, once again requesting a copy of Exhibit 1and proof that it predated the April 2022 closing. In response, Hayden sent Kodadek a PDF document containing a list of personal property and fixtures and represented that this document was "Ex. 1 as offered to the Amendment." That Exhibit 1 included all the personal property and fixtures that the Silbermanns wanted to retain. (Underlying Case Doc. 36-1 at 127-129). For their part, at this time, the Silbermanns had no information to suspect that Hayden's representation was false or that Exhibit 1 had never been attached to the Amendment. Indeed, it was the Silbermanns' understanding, based on what Hayden had told them, that Exhibit 1 was attached to the Amendment when Hayden tendered the Amendment to Hermanns, and that  Hermanns had accepted it.

39.    In November 2022, Hayden filed an Amended Complaint on behalf of the Silbermanns. (Underlying Case Doc. 15). The Amended Complaint did not significantly change the allegations against Hermanns, but it added as Defendants the Silbermanns' realtors and asserted various contract and negligence claims against them. (*Id.*) The Underlying Case against the realtors is not at issue in this action.

40.    In June 2023, Hermanns served discovery requests on the Silbermanns, which included a request for admission that Exhibit 1 was never provided to Hermanns prior to the April 2022 closing, and a request for production of documents seeking any documentary evidence that Exhibit 1 was timely provided to Hermanns. On July 14, 2023, Hayden, on behalf of the Silbermanns, submitted evasive responses to these discovery requests. In preparing those responses, Hayden again failed to advise his clients that he did not prepare or transmit Exhibit 1 prior to closing, that he had actually prepared Exhibit 1 after closing, or that Exhibit 1 was never part of the Amendment and was invalid.

41.    Hayden failed to respond to follow-up emails from Kodadek in August 2023, September 2023, and January 4, 2024, related to the authenticity and/or timing of the transmission of Exhibit 1.

42.     On January 14, 2024, Kodadek sent Hayden a lengthy email explaining

the significance to Hermanns of Exhibit 1 and Kodadek's concern that the version

Hayden sent him had been created after the April 2022 closing:

> . . . Making matters much worse, the PDF containing "Exhibit 1"
> that you did eventually send—but without any context—has the
> original metadata intact and it shows that document was not
> created until after the closing of the property.  I do not raise this
> accusation lightly.
>
> Clif, we have a serious problem here.  The relevant period
> for the exchange of "Exhibit 1" is just a few days between when
> your clients signed the Addendum (04/20/2022) and the closing
> 2-3 days later.  Surely if you sent an email to Hermanns, his
> counsel, or his [real estate] agent, you can easily find that email.
> Failing that, you and your client need to admit that it was never
> provided to the Hermanns.  Either way, you need to do it
> immediately.
>
> As you likely understand at this point, without the benefit
> of the Exhibit . . . your client forthrightly admitted to stripping
> several valuable fixtures from the property post-closing.
> Without the Exhibit, there is absolutely no defense to the fact that
> he simply stole those items.

43.     Hayden did not respond to this email.

44.     Brett Godfrey, a Colorado-based attorney, entered his appearance as

co-counsel of record for the Silbermanns in February 2024. Hayden stayed on the

case as local counsel. (Underlying Case Doc. 42).

45.     On February 8, 2024, Hermanns filed a Motion for Summary Judgment

as to the Silbermanns' affirmative claims and Hermanns' Counterclaims, with the

exception of the fraud and declaratory judgment Counterclaims. (Underlying Case

Doc. 34). Hermanns supported that Motion with several Declarations, including a Declaration of Oscar Soto, the lawyer who represented Hermanns in the negotiations leading up to, and through, the April 2022 Property closing. (*Id.* Doc. 36-4). In that Declaration, Soto attested that Hayden had not transmitted Exhibit 1 to Hermanns, him, or any other agent of Hermanns at any time prior to the closing. (*Id.*)

46.    During consultations with the Silbermanns and his co-counsel about Hermanns' Motion and Soto's Declaration and just as Hayden had consistently and repeatedly done leading up to that time, he continued to insist that he had timely prepared and transmitted Exhibit 1 to Hermanns. He also provided a sworn Declaration referencing "the final combined Exhibit 1" as including certain fixtures excluded from the sale. (Underlying Case Doc. 49-2).

47.    Accordingly, Godfrey prepared a response to Hermanns' Motion for Summary Judgment that was heavily reliant upon Exhibit 1 and Hayden's Declaration and filed those documents on February 29, 2024. (Underlying Case Doc. 49, 52).

48.    Upon receiving the Silbermanns' summary judgment response, that same day, Kodadek sent an email to Godfrey laying out evidence showing that Hayden created Exhibit 1 after the April 22, 2022, closing. He concluded, "unless I am wrong . . . the exhibit is fake and someone is committing a sort of fraud on the

Court." Kodadek acknowledged that Godfrey was not "aware of this problem, but Clif [Hayden] has known about it for a year and a half, if not longer."

49.    As set forth in his Declaration (Underlying Case Doc. 64-1), upon receipt of that email, on behalf of the Silbermanns, Godfrey undertook his own investigation of the authenticity of Exhibit 1. He discovered metadata establishing that Hayden did not create Exhibit 1 until May 11, 2022 (three weeks after the Property closing). The metadata also revealed that Hayden had made additional modifications to Exhibit 1 on October 10, 2022 (nearly six months after closing), shortly before Hayden emailed the PDF copy to Kodadek. That discovery, in early March 2024, was the first time the Silbermanns or their lawyers other than Hayden learned of Hayden's misconduct alleged herein.

50.    On March 14, 2024, Kodadek filed a Declaration that contained a great deal of additional information demonstrating that Exhibit 1 to the Amendment was fake. (Underlying Case Doc. 61).

51.    On March 19, 2024, Godfrey, on behalf of the Silbermanns, filed a pleading entitled "Motion to Withdraw Exhibit in Opposition to Hermanns' Motion for Partial Summary Judgment, and Confession of Hermanns' Motion for Partial Summary Judgment" (Underlying Case Doc. 64). In that pleading, the Silbermanns acknowledged that Kodadek's Declaration and Godfrey's follow-up investigation had proven that Hayden's Exhibit 1 was a fake. (*Id.* Doc. 64-1). Therefore, they

requested leave to withdraw Exhibit 1 from the record and confessed the merits of Hermanns' Counterclaims. (*Id.*)

52.    The March 19, 2024, Motion incorporated several Declarations, including a Declaration of Sandra Lefler, Godfrey's co-counsel, who attested that Hayden had sent her an email on March 4, 2024, acknowledging that he created Exhibit 1 post-closing. (Underlying Case Doc. 64-7).

53.    On April 18, 2024, Federal Magistrate Judge Kathleen DeSoto issued an Order and Recommendations on Hermanns' Motion for Summary Judgment (as well as a Motion for Summary Judgment that the Realtors had filed). (Underlying Case Doc. 66).

54.    With regard to Hermanns' Motion for Summary Judgment on the Silbermanns' affirmative claims, the Magistrate addressed those claims on the merits and recommended that summary judgment be granted. *Id.*

55.    The Magistrate noted that Hermanns was not seeking summary judgment on his fraud or declaratory judgment Counterclaims. With regard to the other Counterclaims, the Magistrate agreed with the Silbermanns that, due to the fake Exhibit 1 that Hayden had interjected into the legal proceedings, "justice would be served by a confession of Hermanns' counterclaims contained in his Motion for Partial Summary Judgment." The Magistrate rejected the Silbermanns' request that Exhibit 1 be stricken from the record. (*Id.*)

56.    The Magistrate addressed the Realtors' Motion for Summary Judgment on the merits and recommended that it be granted. (*Id.*)

57.    On May 9, 2024, the District Court adopted the Magistrate's Findings and Recommendations in full. (Underlying Case Doc. 69). Based upon this holding, the Court ruled that "Hermanns are granted summary judgment as to Counts I through VI of the Amended Complaint and Counterclaim Counts II and IV. The parties will proceed to trial on Hermanns' Counterclaim Counts I and III and the issue of damages." (*Id.*)

58.    On June 4, 2024, Hayden withdrew as local counsel for the Silbermanns, and new local counsel entered his appearance two days later. (Underlying Case Doc. 97).

59.    On June 6, 2024, a final pretrial conference was held, and a Final Pretrial Order was issued. (Underlying Case Doc. 99). In that Order, the parties stipulated that "Exhibit 1 . . . was not attached to the Addendum, nor was it ever provided to Hermanns at any time prior to closing." Regarding the issue of damages, the Final Pretrial Order listed the damages sought by Hermanns, which included $390,000 to repair/replace the micro-hydro system and other fixtures that the Silbermanns had mistakenly removed on the advice of counsel, $11,725 for storage of the Silbermanns' personal property, and $200,000 in attorney fees to date. (*Id.*)

60.    In addition, the Final Pretrial Order stated that the parties were not in agreement regarding the legal effect of the advice that the Silbermanns received from their attorney. (*Id.*) It also stated that Hermanns opposed "the Silbermanns [litigating] their malpractice claim against their attorneys" and maintained that "the Silbermanns are responsible for the actions of their attorney." (*Id.*)

61.    The Final Pretrial Order also stated that Hermanns "contends that additional issues will need to be determined post-trial, including whether the Silbermanns and/or their attorneys should be sanctioned for committing fraud upon the Court" and for "needlessly multipl[ying] these proceedings." (*Id.*)

62.    Pursuant to a court order, the parties attended a settlement conference on June 10, 2024. Because of Hayden's misconduct alleged above, the Silbermanns were facing a damage claim in excess of $600,000, which included attorneys' fees that were likely to increase substantially if the case proceeded to trial on the remaining Counterclaims. In addition, the Silbermanns were facing a potential post-trial sanctions award.

63.    Under those circumstances, as a direct consequence of the position in which Hayden had placed them and in order to mitigate their losses and risks of financial exposure, the Silbermans were forced to settle with Hermanns. Accordingly, they agreed to pay Hermanns, and did pay Hermanns, the sum of

$600,000 in exchange for a release of all claims, counterclaims, and potential sanctions against them.

64.    The Silbermanns also incurred attorneys' fees and costs directly related to Hayden's misconduct.

65.    In addition to economic damages, the Silbermanns suffered significant noneconomic damages, including stress, confusion, uncertainty, and fear because of Hayden's misconduct.

66.    To the extent that The Law Office of Clifton W. Hayden is a separate entity, Hayden was its duly authorized agent and was acting within the course and scope of his agency as to all matters alleged herein. Accordingly, the Law Office of Clifton W. Hayden is vicariously liable for all damages and injuries caused to the Silbermanns as a consequence of Hayden's conduct.

## CAUSES OF ACTION

### COUNT ONE
**(Negligence)**

67.    Plaintiffs incorporate the preceding allegations.

68.    There was an attorney-client relationship between Hayden and the Silbermanns commencing in or around late February 2022 and continuing into June 2024, when the Silbermanns terminated the relationship and Hayden withdrew as their counsel of record. The scope of Hayden's representation included the sale of

the real and personal property located at the Property, post-closing disputes arising out of that sale, and handling the Underlying Case.

69.     Under Montana law, in performing professional services for his clients, Hayden had the duty to exercise reasonable care and skill.

70.     Hayden breached his duties by failure to use reasonable care and skill and was negligent in multiple ways, including, but not limited to the following:

a)     Failing to timely prepare and transmit Exhibit 1 to the Amendment or otherwise take the steps necessary to protect his clients' rights and interests in removing their personal property and fixtures from the Property as part of the sale;

b)     Advising his clients that they could remove certain personal property and fixtures from the Property though he knew that he had not timely prepared or transmitted Exhibit 1 and knew he had not taken any of the necessary steps that would allow them to remove their personal property or fixtures from the Property as part of the sale;

c)     Preparing Exhibit 1 after the closing on the Property and claiming that he had prepared and transmitted it before the closing;

d)     Knowing that the Amendment had been signed with no exhibit, counseling his clients to bring a civil action against Hermanns for the return of

their personal property, exposing them to significant risk of liability for counterclaims, attorneys' fees, and/or sanctions;

e)      Failing to reasonably and adequately consult with his clients about the risks of filing the lawsuit;

f)      Failing to advise his clients that no such lawsuit was needed because Hermanns had catalogued and stored all of Silbermanns' personal property and was eager for them to pick it up from a storage facility;

g)      Preparing and filing the Complaint that failed to mention the fact that the Amendment did not include the referenced Exhibit 1;

h)      In preparing the Answer to Hermanns Counterclaims, failing to consult with his clients about their right to assert the defense of reliance upon the advice of counsel in connection with their removal of fixtures from the Property, and failing to allege any such defense, thereby waiving it;

i)      In preparing the Answer to Hermanns' Counterclaims, failing again to disclose the fact that the Amendment did not include Exhibit 1;

j)      Sending an email on the Silbermanns' behalf to opposing counsel in October 2022 with a PDF document containing a list of personal property and fixtures and representing that this document was "Ex. 1 as offered to the Amendment," and failing thereafter to correct that misrepresentation;

k)      Serving discovery responses on the Silbermanns' behalf to opposing counsel in July 2023, in which he refused to admit that Exhibit 1 had never provided to Hermanns prior to the April 2022 closing or to concede that there was no documentary evidence to show that Exhibit 1 had been timely provided to Hermanns, and failing thereafter to correct those responses;

l)      In consulting with the Silbermanns and his co-counsel about Hermanns' Motion and Soto's Declaration in February 2024, continuing to insist that he had timely prepared and transmitted Exhibit 1 to Hermanns, providing them with a sworn Declaration to that effect, which was false, and failing thereafter to correct that misrepresentation;

m)      Failing to advise his clients or co-counsel at any time prior to March 4, 2024, that he had not timely prepared or transmitted Exhibit 1;

n)      Failing to advise his clients or co-counsel at any time prior to March 4, 2024, that he created Exhibit 1 after closing or that it was not part of the Amendment and was a fake;

o)      Submitting or allowing Exhibit 1 to be submitted to opposing counsel and the Court as evidence and in support of legal arguments despite being the only person with knowledge that it was not part of the Amendment but was a fake;

p)    In response to multiple inquiries from defense counsel Kodadek, failing to state that Exhibit 1 had been prepared after the closing and had not been attached to the Amendment; and

q)    Conducting himself in such a manner and taking steps as counsel of record for the Silbermanns that caused them to confess judgment, face sanctions, and incur losses and expenses in connection with the settlement of the lawsuit.

71.    Hayden never informed his clients of his breaches of duties, consulted with them about how that might affect his ability to continue to represent them, or obtained their informed consent to such continued representation.

72.    The Silbermanns did not discover Hayden's misconduct until early March 2024, when co-counsel uncovered evidence establishing that Hayden had created Exhibit 1 after closing and had modified it only shortly before Hayden first sent it to opposing counsel, and Hayden finally admitted to co-counsel that he prepared the document after closing.

73.    Hayden is liable as a matter of law for the Silbermanns' resulting damages.

## COUNT TWO
### (Breach of Fiduciary Duty)

74.    Plaintiffs incorporate the preceding allegations.

75.     Under Montana law, Hayden was the Silbermanns' fiduciary and, as such, owed the highest duties to his clients to act with the utmost fairness, good faith, integrity, and undivided loyalty.

76.     Hayden's fiduciary duties included the obligation to comply with the following standards of conduct:

a)      to provide competent representation;

b)      to abide by his clients' decisions concerning the objectives of the representation and to consult with his clients as to the means by which those objectives are to be pursued;

c)      to act with reasonable diligence and promptness;

d)      to promptly inform his clients of any decision or circumstance requiring informed consent, to reasonably consult his clients about the means by which the clients' objectives are to be accomplished, and to keep his clients reasonably informed about the status of the matter; and

e)      not to engage in any services where there is a significant risk of a material limitation on the lawyer's ability to carry it out as a result of a personal interest of the lawyer.

77.     As alleged above, Hayden breached his fiduciary duties by:

a)      failing to provide competent representation;

b)      failing to abide by his clients' decisions concerning the objectives of

the representation and to consult with his clients as to the means by which those objectives are to be pursued;

c)    failing to act with reasonable diligence and promptness;

d)    failing to promptly inform his clients of decisions or circumstances requiring informed consent, to reasonably consult his clients about the means by which the clients' objectives are to be accomplished, and to keep his clients reasonably informed about the status of the matter;

e)    engaging in services where there was a significant risk of a material limitation on the lawyer's ability to carry them out as a result of a personal interest of the lawyer; and

f)    failing to timely advise the Silbermanns, opposing counsel, and the Court that Exhibit 1 was fabricated after-the-fact and that he had concealed his misconduct.

78.    The Silbermanns did not discover Hayden's misconduct until early March 2024, when co-counsel uncovered evidence establishing that Hayden had created Exhibit 1 after closing and had modified it only shortly before Hayden first sent it to opposing counsel, and Hayden finally admitted to co-counsel that he prepared the document after closing.

79.    Hayden is liable as a matter of law for the Silbermanns' resulting damages.

## COUNT THREE
### (Constructive Fraud)

80.    Plaintiffs incorporate the preceding allegations.

81.    In the course of his legal representation of the Silbermanns, Hayden made numerous representations regarding Exhibit 1, including but not limited to:

a)    That he had prepared Exhibit 1 prior to closing;

b)    That Exhibit 1 was attached to the Amendment when Hermanns accepted it;

c)    That, accordingly, the Amendment included the Silbermanns' right to remove fixtures such as solar panels, micro-hydro generators, and boilers; and

d)    That Exhibit 1 was a true and authentic document.

82.    Those representations were material, false representations. Hayden knew the representations were false.

83.    The Silbermanns did not know that the representations were false. Hence, they acted upon them by, among other things, following: Hayden's legal advice to remove the property and fixtures they believed they had the right to remove; Hayden's legal advice regarding the filing and prosecution of the lawsuit against Hermanns; Hayden's legal advice regarding the submission of pleadings and discovery responses that were inaccurate or incomplete; Hayden's legal advice regarding resisting Hermanns' counterclaims; and Hayden's inaccurate or incomplete email responses to opposing counsel. In further reliance upon Hayden's

misrepresentations, the Silbermanns' exposed themselves to risk of liability for damages and legal fees and expenses and incurred their own legal fees expenses.

84.     The Silbermanns were justified in relying on the representations because Hayden was their lawyer and they had the right to rely on him with utmost trust and confidence.

85.     As the Silbermanns' lawyer, Hayden had a duty to disclose all facts material to his legal representation, including but not limited to the following facts:

a)     that he failed to timely prepare and transmit Exhibit 1 to the Amendment or otherwise take the steps necessary to protect his clients' rights and interests in removing their personal property and fixtures from the Property as part of the sale;

b)     that despite his advice to his clients that they could remove certain personal property and fixtures from the Property, he knew that Exhibit 1, which listed those fixtures and personal properties, had not been timely prepared or transmitted by him and that he had not taken any of the necessary steps that would allow them to remove such items from the Property as part of the sale;

c)     that he prepared Exhibit 1 after the closing on the Property;

d)     that he had not timely prepared Exhibit 1 or transmitted it to Hermanns;

e)     that his clients had significant risk of liability for counterclaims, attorneys' fees and/or sanctions if they followed his advice to file the lawsuit against the Hermanns because the Amendment had been signed with no exhibit;

f)      that no such lawsuit was needed because Hermanns had catalogued and stored all of the Silbermanns' personal property and was eager for them to pick it up from a storage facility;

g)     that his clients had the right to assert the defense of reliance upon the advice of counsel in connection with their removal of fixtures from the Property, and that if they failed to assert that defense, it would be waived;

h)     in preparing the Answer to Hermanns' Counterclaims, that the Amendment did not include Exhibit 1;

i)      in consulting with the Silbermanns and his co-counsel about Hermanns' Motion and Soto's Declaration in February 2024, that he had timely prepared and transmitted Exhibit 1 to Hermanns, and he provided a sworn Declaration to that effect, which was false; and

j)      that Exhibit 1 was a fake.

86.    In breach of his duty to disclose all material facts, Hayden failed to disclose the above facts to his clients or to co-counsel prior to March 4, 2024.

87.    Hayden's misrepresentations and/or failures to disclose facts constitute constructive fraud under Montana law.

88.    The Silbermanns did not discover Hayden's misconduct until early March 2024, when co-counsel uncovered evidence establishing that Hayden had created Exhibit 1 after closing and had modified it only shortly before Hayden first sent it to opposing counsel, and Hayden finally admitted to co-counsel that he prepared the document after closing.

89.    Hayden's failure to reveal the true facts and circumstances about Exhibit 1 to his clients and co-counsel until early March 2024 constitutes fraudulent concealment of his misconduct.

90.    Hayden is liable as a matter of law for the Silbermanns' resulting damages.

## **Damages**

91.    Based on the above facts, the Silbermanns have suffered actual damages under Montana law, incurred and paid no later than July 11, 2024, when they satisfied Hermanns' settlement and the case was dismissed, in the total amount, exclusive of prejudgment interest, of $ 888,333. This figure is computed as follows:

(a)    Payments to Hermanns:  $600,000

(b)    Payments to Hayden:      $40,000

(c)    Payments to counsel to remedy Hayden's misconduct:     $248,333

92.    Based on the above facts, the Silbermanns have also suffered general damages in an amount to be proven at trial.

**Punitive Damages**

93.    All preceding paragraphs are incorporated by reference.

94.    Hayden acted with actual malice as that term is defined in Montana law in taking the actions of which the Silbermanns complain herein. These actions created a high probability of injury to the Silbermanns, but Hayden deliberately proceeded to act either in conscious or intentional disregard of, or with indifference to, that high probability of injury.

95.    Thus, Hayden is liable for punitive damages under Montana law.

96.    The procedures set forth in Mont. Code Ann. § 27-1-221(5) regarding pleading punitive damages are not controlling in this proceeding. *See Dzintars v. Fireman's Fund Ins. Co.*, No. CV-24-45-BU-BMM, 2024 WL 4347887, *4-5 (D. Mont. Sept. 30, 2024)

WHEREFORE, the Silbermanns pray for judgment in their favor against Hayden for all special, general, and punitive damages permitted under Montana law, plus a post-trial award of prejudgment interest, attorneys' fees, and costs as permitted by Montana law, and for such other and further relief as may be just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a trial by jury.

DATED this 30th day of June 2025.

RESOLUTE LAW PLLC


<u>/s/ Timothy Strauch     </u>
Timothy Strauch